**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

RENERGY, INC.,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_5/1/2026__

                      Plaintiffs,

           -against-

MT. HAWLEY INSURANCE COMPANY,

                    Defendant.

---------------------------------------------------------------------X

**25-CV-5073 (AT) (KHP)**

**OPINION AND ORDER**
**ON**
**MOTION FOR LEAVE TO AMEND**
**COMPLAINT**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiff Renergy, Inc. ("Renergy" or "Plaintiff") brings this action against Mt. Hawley Insurance Co. ("Mt. Hawley" or "Defendant") alleging breach of contract and bad faith.  Plaintiff seeks reimbursement of costs associated with Plaintiff's response to a claimed pollution incident through an insurance policy issued by Defendant.  Before the Court is Plaintiff's motion for leave to file an amended complaint. For the following reasons, Plaintiff's motion is GRANTED.

**BACKGROUND**

This dispute centers on a Site-Specific Environmental Liability Insurance Policy (the "Policy") issued by Defendant to Plaintiff for a period spanning from August 26, 2022 to August 26, 2023.  Under Coverage B of the Policy, Defendant agreed to pay "those sums that the insured becomes legally obligated to pay for Corrective Action Costs caused by a Pollution Incident." (ECF No. 59-1 (Proposed First Amended Complaint ("FAC")) ¶ 9)  "Corrective Action Costs" are defined by the Policy as:

reasonable and necessary costs incurred for response, abatement, investigation and removal actions resulting from a Pollution Incident as legally required by an Implementing Agency [here the Ohio Environmental Protection Agency ("Ohio EPA")] acting pursuant to Environmental Laws including the preparation, development, modification and implementation of a corrective action plan and the monitoring, evaluation and reporting of the results of the implementation of such plan."

(*Id.* ¶¶ 10, 16, 23)

Plaintiff alleges that, following a December 24, 2022 release of digestate[1] from its anaerobic digester, which resulted in pollution to the surrounding environment, it submitted a claim to Defendant for coverage under the Policy.  (*Id.* ¶¶ 13-25)  Defendant investigated the claim and retained a third-party consultant, Vertex Companies, LLC, to review Plaintiff's submitted invoices.  (*Id.* ¶ 26-29)  According to Plaintiff, Defendant adopted Vertex's determinations without sufficient independent analysis, issued duplicative and burdensome document requests, and ultimately partially denied coverage, agreeing to pay only $246,718.25 of the approximately $1,562,443.88 sought by Plaintiff.  (*Id.* ¶¶ 33-35, n.1)  Plaintiff further alleges that Defendant's handling of the claim caused it to incur consequential damages, including liens placed on its property by unpaid vendors, late fees and penalties, and lost opportunities to sell the property due to those liens.  (*Id.* ¶ 48)

Plaintiff originally commenced this action in the United States District Court for the Southern District of Ohio.  On June 17, 2025, the case was transferred to this District.  (ECF No. 21)  Following the transfer, the parties agreed to engage in preliminary settlement discussions, and a settlement conference was scheduled for January 6, 2026. (ECF No. 44)  Prior to that

---

[1] "Anaerobic digestion produces digestate, a nutrient-rich slurry. Digestate can be applied to agricultural land as a fertilizer and/or soil amendment to improve soil health." *See* Environmental Protection Agency, *Environmental Benefits of Anaerobic Digestion (AD)*, https://www.epa.gov/anaerobic-digestion/environmental-benefits-anaerobic-digestion-ad [last accessed Apr. 28, 2026]

conference, Defendant submitted a pre-motion letter seeking a briefing schedule for a proposed motion for judgment on the pleadings. (ECF No. 49)  In response, Plaintiff advised the Court that it intended to amend its complaint if the parties were unable to consummate a settlement.  (ECF No. 55)  The settlement conference ultimately ended in impasse, and Plaintiff thereafter moved to amend its complaint. (ECF No. 56)  The Court then set a briefing schedule for Plaintiff's motion for leave to file an amended complaint.  (ECF No. 57)

On February 4, 2026, Plaintiff filed its motion, a supporting memorandum of law, and the FAC.  (ECF Nos. 58-59)  The FAC, among other things, withdraws a declaratory judgment claim in an effort to resolve one of the issues raised in Defendant's pre-motion letter, attempts to clarify the allegations supporting bad faith claims handling under New York law, and add additional factual allegations to support its position.  (ECF Nos. 49, 74-1)  In its opposition filed on February 25, 2026, Defendant does not oppose the motion as to the withdrawal of the declaratory judgment claim but it argues that Plaintiff's amendment clarifying and adding facts to its bad faith claim should be denied as futile because New York does not recognize bad faith claims handling causes of action for third-party liability policies, the bad faith claim is duplicative of the breach of contract claim, and even if the Policy were deemed to be a first-party policy susceptible to a bad faith claim handling cause of action, Plaintiff fails to plausibly plead the necessary elements required for a bad faith claim.  (ECF No. 62)

**LEGAL STANDARD**

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within specified time periods not applicable here.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's

written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted).  Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).

A court may deny a motion to amend a complaint when the proposed amendments are futile.  Proposed amendments are futile when they fail to state a claim under Rule 12(b)(6). I*BEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).  "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile*." Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514 (PAC) (HBP), 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010) (citation omitted).  Because determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6), "[f]utility is generally adjudicated without resort to any outside evidence," and the court must accept all facts pleaded as true.  *Wingate v. Gives*, No. 05 Civ. 1872 (LAK) (DF), 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  At bottom, "[a] proposed amendment is futile, and need not be allowed, when it would fail to cure the deficiencies identified in the prior complaint."  *Vierczhalek v. MedImmune Inc.*, 803 F. App'x 522, 526 (2d Cir. 2020).

**DISCUSSION**

To start, Defendant does not contend that undue delay, bad faith, dilatory motive, or undue prejudice warrant denial of leave to amend.  Its sole argument is that the revisions to the bad faith claims handling cause of action are futile.

Defendant's principal futility argument rests on a categorical proposition: that New York's recognition of bad faith claims handling, and the consequential-damages remedy associated with that doctrine, is confined to first-party property policies and because the claim here allegedly involves third-party liability coverage (which Plaintiff disputes), no bad faith claim can be brought.  Defendant also argues that Plaintiff's bad faith claim is futile because it is duplicative of its breach of contract claim.  Finally, Defendant argues that the FAC neglects to adequately explain how and why the sought-after consequential damages were "within the contemplation of the parties as the probable result of a breach at the time of contracting."  *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315-16 (1995) (citing *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 613-15 (N.Y. 1994)); (ECF No. 62 at p. 6).  I address these arguments below.

1.  **Whether New York Law Limits Bad-Faith Claims to First-Party Insurance Claims**

The parties agree that New York law recognizes a claim for breach of the implied covenant of good faith and fair dealing – otherwise referred to as a "bad faith" claim – where an insurer's handling of a claim is alleged to have frustrated the policy's purpose and caused damages distinct from a simple failure to remunerate the policy proceeds.  *See Grey Rock Gathering & Mktg., LLC v. Liberty Mut. Ins. Co.,* No. 23 Civ. 3347 (JPO), 2024 WL 3520470, at *6 (S.D.N.Y. July 23, 2024) (finding that "'New York courts do recognize that in insurance

company's handling of a claim can give rise to a breach of the duty of good faith and fair dealing.'") (quoting *Fishberg v. State Farm Fire & Cas. Co.,* No. 20 Civ. 6664 (LJL), 2021 WL 3077478, at *3 (S.D.N.Y. July 20, 2021) (collecting cases)).  Under the law, the aggrieved party is entitled to seek consequential damages caused by the bad faith claims handling.  *See United Specialty Ins. Co. v. Fisk Fine Art Servs., LLC*, No. 15 Civ. 2802 (LTS) (JCF), 2016 WL 1268273, at *4 (S.D.N.Y. Mar. 31, 2016) ("[W]here bad faith is sufficiently alleged in a breach of contract claim, consequential damages flowing from the bad faith breach can be recovered."); *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 193, 196 (2008) ("Special, or consequential damages, which do not so directly flow from the breach, are recoverable in limited circumstances. . . . When an insured in such a situation suffers additional damages as a result of an insurer's excessive delay or improper denial, the insurance company should stand liable for these damages.").

However, Defendant argues that such a claim is only cognizable when it involves insurance claims relating to first party coverage, not third-party liability coverage like the coverage at issue in this case.   Plaintiff disputes this reading of New York law and contends, in any event, that it also seeks first-party liability coverage.  Defendant's argument is not persuasive.

While it is true that bad faith claims are narrowly recognized, New York does not categorically restrict them to situations involving first-party insurance coverage.  *Bi-Econ. Mkt., Inc*, 10 N.Y.3d 187 and *Panasia Ests., Inc. v. Hudson Insurance Co.*, 10 N.Y.3d 200 (2008), relied on by Plaintiff, did both arise in the first-party context, but neither announced a categorical rule that bad faith claims handling claims against insurers are unavailable outside that context as

Defendant argues.  Defendant's citation to *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334 (S.D.N.Y. 2021), in support of its argument is misplaced.  The Court in *Scottsdale Ins. Co.* did not hold that an insured may never plead a bad faith claim based on claims handling under a policy containing third-party coverage.  In fact, the Court specifically noted the opposite – that "[t]here is authority under New York law for a claim of bad faith liability in a third-party insurance context both in the denial of coverage and for bad faith failure to settle."  *Scottsdale Ins. Co.*, 549 F. Supp. 3d at 343.  Further, *Scottsdale Ins. Co.* was decided on a motion for summary judgment, not on a Rule 12(b)(6) motion, and the Court, upon review of the record, found that the insured failed to "identif[y] facts sufficient to sustain" the bad faith claim, not that the claim was not legally cognizable because the insurance policy involved third-party coverage.  *Id*.  More recently, in *Rockefeller Univ. v. Aetna Cas. & Sur. Co.*, 231 A.D.3d 457, 458 (1st Dep't 2024), the First Department explicitly denied an insurer's motion to dismiss the plaintiff's claim for bad faith claims handling under a third-party liability policy, showing that that bad faith claims in the third-party insurance context can survive a motion to dismiss under New York law if adequately plead.  And, like the allegations in the FAC here, the complaint in *Rockefeller Univ*. included allegations that the insurer had a "wait and see strategy" and that "claims handling practices were employed to limit defendants' financial exposure, in gross disregard of plaintiff's interests."  231 A.D.3d at 48.  These allegations were sufficient to state a plausible bad faith claim.  *See also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624 (2d Cir. 2001) (determining that a third-party insurer could face bad faith liability for denying coverage but concluding the *facts* did not support such a finding).

7

Thus, New York recognizes bad faith claims handling regardless of whether the claim involves first-party or third-party liability coverage.  Given this, the Court need not analyze whether the policy and coverage dispute involves first-party or third-party liability coverage on this motion insofar as the bad faith claim can be asserted in both contexts.

## 2. Whether Plaintiff's Bad Faith Claim is Duplicative of Its Breach of Contract Claim

Under New York law, a claim alleging breach of the implied covenant of good faith and fair dealing is duplicative and subject to dismissal when it rests on the same factual allegations and seeks the same relief as a breach of contract claim.  *See Deer Park Enters., LLC v. Ail Systems, Inc.*, 57 A.D.3d 711, 712 (2d Dep't 2008).  But, where the "conduct allegedly violating the implied covenant is not also the predicate for breach of ... an express provision of the contract, then the two claims need not be dismissed as duplicative."  *Fishberg v. State Farm Fire & Cas. Co.,* No. 20 Civ. 6664 (LJL), 2021 WL 3077478, at *3 (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of ... an express provision of the underlying contract.") (internal quotation marks and citation omitted).

The Court finds that the FAC's breach of contract claim is not duplicative of its bad faith claim for substantially the same reasons as the Court found in *Grey Rock Gathering & Mktg., LLC*, 2024 WL 3520470, at *6.  There, like here, the plaintiff adequately alleged that the insurer "mishandled the claim independently of the breach itself."  *Id*.  In this case, while the breach of contract claim is based on the pure denial of insurance coverage, the bad faith claim is based

8

entirely on Defendant's handling of the claim.  Indeed, the damages requested for each claim are distinct and the FAC alleges separate conduct for each.

The FAC is not limited to the assertion that Defendant failed to pay the amount Plaintiff believes is due under the insurance policy.  Rather, the FAC alleges, among other things, that Defendant failed to conduct a fair investigation, relied on allegedly inadequate claims-handling review, made repetitive and unnecessary document demands, shifted coverage positions after years of claim activity, and made statements concerning Plaintiff's conduct (such as that it engaged in intentional wrongdoing) that Plaintiff contends lacks factual support.  (FAC ¶¶ 44-46, 60)  The FAC further alleges that those claims-handling practices caused consequential harm, including vendor liens, late charges and penalties, and lost opportunities to sell property. (*Id.* ¶ 48)  While these allegations may overlap to some extent with the coverage dispute, they are not, on the face of the proposed pleading, confined to the bare nonpayment of policy benefits.  *See JJM Sunrise Auto., LLC v. Volkswagen Grp. of Am., Inc.*, 997 N.Y.S.2d 270, 287 (N.Y. Sup. Ct. 2014) (determining that while some alleged damages from bad faith claim may be "intrinsically tied" with the breach-of-contract claim, they consist of "distinct, non-duplicative independent claims.") (quoting *Deer Park Enters, LLC.*, 57 A.D.3d at 712 (2d Dep't 2008)).  Thus, the bad faith claim as plead is not duplicative.

### 3. Whether Plaintiff Adequately Pleads Consequential Damages

Finally, Defendant argues that the allegations in the FAC fail to plausibly state a bad faith claim for consequential damages.  As noted above, a party may obtain consequential damages for "those risks foreseen or which should have been foreseen at the time the contract was made."  *Bi-Econ. Mkt., Inc*, 856 N.Y.3d at 193.  To state a claim for consequential damages

resulting from an insurer's bad faith claims handling, a plaintiff must adequately allege that (1) consequential damages flowed naturally and proximately from the breach of contract; (2) they were, or reasonably should have been, foreseeable; and (3) they were within the reasonable contemplation of the parties when the Policy was issued. *See Roman Cath. Diocese of Rockville Ctr. v. Gen. Reinsurance Corp*., No. 16 Civ. 2063 (CM), 2016 WL 5793996, at *4 (S.D.N.Y. Sept. 23, 2016) (citing *Bi-Econ. Mkt., Inc*, 856 N.Y.3d at 192); *see also Kenford Co., Inc. v. County of Erie,* 537 N.E.2d 176 (1989) ("With respect to general consequential damages, New York follows the time-honored rule of *Hadley v. Baxendale* that for damages to be awardable, they must either arise naturally from the breach of the contract or be contemplated by both parties at the time they made the contract."); *Powell v. Liberty Ins. Co.,* No. 24 Civ. 989 (ENV) (CLP), 2025 WL 3460745, at *4 (E.D.N.Y. July 14, 2025) (similar).

Notably, the law does not require the contract to specifically address consequential damages for them to be available and there is no heightened pleading standard when asserting a claim for the same. *See generally Panasia Ests. Inc. v. Hudson Ins. Co.,* 889 N.Y.S.2d 452 (1st Dep't 2009); *see also United Specialty Ins. Co*, 2016 WL 1268273, at *4 (finding that "the policyholder need not point to an express contract provision or specific language permitting the recovery of consequential damages."); *Roger Fox v. Liberty Mutual Fire Ins. Co*., No. 24 Civ. 7330 (KMK), 2026 WL 867150 (S.D.N.Y. Mar. 30, 2026) (noting that all that is required at the pleading stage is that allegations must plausibly support a conclusion that consequential damages were a natural consequence of the breach, they were or should have been foreseeable, and were reasonably contemplated at the time the policy was issued). Allegations that an insurer failed to properly investigate a claim or bargain for and settle claims in good faith can support the

10

foreseeability requirement.  *Panasia Ests. Inc.*, 886 N.Y.S.2d at 515.  Additionally, the First

Department recently held in *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 92 N.Y.S.3d

231, 233 (1st Dep't 2019), that whether specific consequential damages "were, in fact,

foreseeable should not be decided on a motion to dismiss and must await a fully developed

record."  It therefore held a lower court erred in prematurely dismissing a consequential

damages claim.  *Id*.  It also noted that an insured's obligation "to take all reasonable steps to

protect the covered property from further damage by a covered cause of loss" supported an

allegation that identified consequential damages were foreseeable.  *Id*. at 234; *see Evergreen*

*Line A Joint Serv. Agreement FMC No. 011982 v. US Dynamics Recycling LLC*, No. 18 Civ. 313

(AKH), 2018 WL 6313607, at *4 (S.D.N.Y. June 12, 2018) (rejecting the defendant's argument

that "the damages alleged are too remote to be foreseeable under the contract" because

"[s]uch an inquiry is not appropriate" at the motion to dismiss stage "[g]iven the complexity

and scope of the shipping industry.") (citing *Millgard Corp. v. E.E. Cruz/Nab/Fronier-Kemper*,

No. 99 Civ. 2952 (LBS), 2003 WL 22801519, at *2 (S.D.N.Y. Nov. 24, 2003)); *Millgard Corp.*, 2003

WL 22801519, at *2 ("The scope of permissible consequential damages is an issue which must

await the presentation of evidence as to what were the foreseeable consequences of wrongful

termination.").

The FAC alleges that Defendant's claims-handling conduct caused vendor late-fees,

penalties, liens on Plaintiff's property, and lost sale opportunities due to outstanding liens –

specific alleged downstream damages.  (FAC ¶ 49)  The very nature of these downstream

consequences render it plausible that they flowed from Defendant's alleged failure to cover

Plaintiff's damages under the Policy and its delay in handling the claim by alleged failure to

properly investigate and redundant requests for information.   And the alleged delay in handling the claim and specifics about the manner of the alleged bad faith handling set forth in the FAC is sufficient to render it plausible that the specific categories of consequential damages identified were foreseeable.  Additionally, the FAC sets forth policy provisions that in and of themselves render it plausible that the type of consequential damages specified in the FAC were within the parties' reasonable contemplation at the time they entered into the contract. *See Roman Cath. Diocese of Rockville Ctr.*, 2016 WL 5793996, at *4 ("Whether the injuries that gave rise to Plaintiff's claims for consequential damages were reasonably foreseeable and contemplated by the parties, is a factual issue and thus reserved for the merits stage of litigation.") (internal quotation marks and citation omitted).  *Compare Dahlinger v. First Am. Specialty Ins. Co.*, No. 19 Civ. 20 (LEK) (TWD), 2020 WL 1511261, at *4 (N.D.N.Y. Mar. 30, 2020) (determining that the plaintiff's allegations that the insurer "did not adequately investigate the entire scope of damages" and disregarded the plaintiff's information over the "incorrect and flawed opinions of its adjusters," amounted to "wholly conclusory" "bare bones allegations" that were properly subject to a motion to dismiss), *with Zicherman v. State Farm Fire and Cas. Co.*, 698 F. Supp. 3d 564, 569 (E.D.N.Y. Oct. 12, 2023) (finding bad faith was adequately pleaded where the complaint alleged specific details to demonstrate that the delayed payments contributed to the insurer's "undue pressure" in forcing the insured to settle a claim, including that the insurer first delayed processing the claim for months, gave an initial low-ball offer, stopped negotiating and required a new builder to start over on rebuilding three months after the plaintiff submitted the claim, and later reneged on an advance); *see also King v. Liberty Mut. Ins. Co.*, No. 25 Civ. 345 (MAD) (TWD), 2025 WL 1677074, at *4 (N.D.N.Y. June 13, 2025)

(slip copy) ("[The p]laintiff does not specify what consequential damages he suffered, besides 'attorney's fees and other costs and disbursements.' Therefore, under New York law, to a legal certainty, [the p]laintiff cannot recover under a claim for bad faith denial of coverage, as pleaded.") (internal citation omitted); *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 173 (E.D.N.Y. 2014) (concluding pleading adequate where the plaintiff alleged that business income was lost as a result of the failure to pay an insurance claim).  Thus, Defendant's futility arguments are unpersuasive.  The FAC sets forth a plausible bad faith claims handling cause of action.

**CONCLUSION**

For the foregoing reasons Plaintiff's motion for leave to file an amended complaint is GRANTED.

**SO ORDERED.**

DATED:   New York, New York
May 1, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge

13
